THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MAY KOPEZAK and Others, Appellants.

Court of Special Sessions, City of New York, Appellate Part, First Judicial Department, October 9, 1934.

*Louis Fleischer* [*Osmond K. Fraenkel* of counsel], for the appellant.

*William C. Dodge, District Attorney* [*A. Delli Paoli* of counsel], for the respondent.

SALOMON, J. The appellants are charged with disorderly conduct in violation of subdivision 2 of section 722 of the Penal Law for the reason that on the 28th day of March, 1934, and prior thereto, in front of premises 221 East Sixth street in the county and city of New York, "the defendants did unlawfully and with intent to provoke a breach of the peace and whereby a breach of the peace might be occasioned, did while acting together and in concert with each other annoy, disturb, interfere with and be offensive to deponent in that said defendants did picket in front of said premises unlawfully and incited tenants of said premises to effect a rent strike. That defendants displayed signs tending to disturb the peaceful relationship between deponent as landlord of said premises and tenants therein."

The evidence adduced upon the trial establishes the following facts: That on the 26th day of March, 1934, the appellants, tenants of the premises in question, walked up and down the street in front of these premises carrying signs which read as follows: " Rent strike against Fire Trap Conditions." " We don't want to burn." " Rent strike against Fire Trap Conditions." " We demand fire proof conditions." That on the 26th day of March, 1934, a police officer advised the appellants that the acts were contrary to law and actually read them an opinion of the corporation counsel to that effect to convince them that they were violating the law and he instructed them to stop their activities; that notwithstanding that, they continued to walk up and down with the signs as above described displayed for fifteen or twenty minutes and that on the twenty-eighth day of March they continued so to do.

The officer testified that he desisted from arresting the appellants or serving a summons upon them on the twenty-sixth, but that on

the twenty-eighth, finding that they still continued their acts, he issued a summons in the matter. The appellants admitted all of the above acts, excepting that they denied they were told to stop by the officer.

The law on the subject of peaceable and quiet picketing is well established by all the courts and there is no question that peaceable and lawful picketing whether there be a strike or no strike is not contrary to law. Use of the word "picketing" in this complaint is an unfortunate use of the term. "Picketing" is defined as follows: To be placed on watch or guard, to watch at or about factories to persuade workers to refrain from accepting employment during a strike or otherwise to influence or observe them, to act as a picket in a strike, a committee placed on guard or patrol to intercept non-union workers and persuade or otherwise urge them against taking a particular job, especially during a strike. (Funk & Wagnalls New Standard Dict.)

The right of groups to gather or assemble for lawful purposes to protest in a peaceable manner against injustices or oppressions has not and should not be denied to the citizenry. There have been instances where consumers publicly protested against excessive prices demanded for bread; where tenants publicly protested against excessive rentals demanded by landlords; there have also been instances where a group of citizens feeling aggrieved at conditions over which government officials had jurisdiction, whether such grievances were just or fancied, gathered publicly against the alleged injustices and even went so far as to march on to the offices of those in charge of the matters pertaining thereto, which were not held to be unlawful.

In the case at bar, while no evidence was adduced as to the cause of the dissatisfaction between the landlord and tenants of the premises in question, the attorney for the appellants very clearly points out that the cause was the uninhabitable condition of the premises, and of course we have the reading matter on the signs displayed by the appellants which reading matter has hereinbefore been fully set forth.

Assuming that the grievances of the appellants were justified, the conditions of the premises in question should be remedied if possible and if not the same should be condemned by the proper authorities. The municipality of the city of New York is so organized and constituted that the inhabitants of the city are protected against the conditions complained of, and the various departments, such as the tenement house, building and fire departments, are existent for that purpose. While this court is not called upon to pass upon any acts or conduct of a group of tenants

leveled at any of the departments for failure to act, nevertheless, the lawful and orderly manner of the tenants was to file their complaints with one of these departments.

The acts of the appellants from the twenty-sixth of March to the twenty-eighth day of March, which included marching up and down in front of the premises in question, carrying the signs containing the printed matter above described, in the opinion of this court, distinguishes the case at bar from that line of cases in which picketing and demonstrations were upheld, and the magistrate was justified in holding that a continuance of such acts and conduct did tend to lead to disorder and to a breach of the peace.

Judgment affirmed.

McINERNEY, P. J., and VOORHEES, J., concur.