ANORA AMUSEMENT CORPORATION, Plaintiff, *v.* " JOHN DOE," as President of Negro Youth Association of Corona, etc., and Others, Defendants.

Supreme Court, Special Term, Queens County, March 30, 1939.

*Bisbano & Curro* [*Joseph Curro* of counsel], for the plaintiff.

*Benjamin Marvin* [*Sydney S. Snyder* of counsel], for the defendants.

STODDART, J. The plaintiff is the owner of a theatre in a section of Queens county wherein a large number of negroes reside. The defendants are all members of the Negro Youth Association of Corona. The purpose of that organization, as expressed in the affidavit of Walter E. Reifer, one of the defendants herein, is to secure employment for and better the terms, conditions and wages of such employment of its members. A great many of the plaintiff's patrons are negroes. Following the rejection by the plaintiff of a demand by the defendants that negroes be hired for some of the positions in the theatre, the defendants caused pickets to patrol the sidewalk in front of said theatre.

The defendants urge two reasons for the denial of this motion: *First,* they claim that the controversy involves a labor dispute and that no preliminary injunction may be granted except in accordance with the requirements of section 876-a of the Civil Practice Act. In support of that contention they cite *New Negro Alliance* v. *Sanitary Grocery Company, Inc.* (303 U. S. 552). That case involved an analogous situation, with one point of difference, and that is that the law which was construed by the court was the Norris-LaGuardia Act. The basis for the determination therein is revealed in the following quotation from the opinion by ROBERTS, J. (at pp. 559, 560):

" The Court of Appeals thought that the dispute was not a labor dispute within the Norris-LaGuardia Act because it did not involve terms and conditions of employment such as wages, hours, unionization or betterment of working conditions, and that the trial court, therefore, had jurisdiction to issue the injunction. We think the conclusion that the dispute was not a labor dispute within the meaning of the act, because it did not involve terms and conditions of employment in the sense of wages, hours, unionization or betterment of working conditions is erroneous.

" Subsection (a) of § 13 provides: ' A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; * * * or when the case involves any conflicting or competing interests in a "labor dispute " (as hereinafter defined) of "persons participating or interested " therein (as hereinafter defined).' Subsection (b) characterizes a person or association as participating or interested in a labor dispute ' if relief is sought against him or it and if he or it * * * has a direct or indirect interest therein, * * *.' Subsection (c) defines the term ' labor dispute ' as ' including any controversy concerning terms or conditions of employment, * * * regardless of whether or not the disputants stand in the proximate relation of employer and employee.' These definitions plainly embrace the controversy which gave rise to the instant suit and classify it as one arising out of a dispute defined as a labor dispute. They leave no doubt that the New Negro Alliance and the individual petitioners are, in contemplation of the act, persons interested in the dispute."

Subdivision 10 of section 876-a of the Civil Practice Act provides in part:

" (a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft or occupation, * * *; or when the case involves any conflicting or competing interests in a ' labor dispute ' (as hereinafter defined) of ' persons participating or interested ' therein (as hereinafter defined) * * *.

" (b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it and if he or it is engaged in the industry, trade, craft or occupation in which such dispute occurs, or is a member, officer or agent of any association of employers or employees engaged in such industry, trade, craft or occupation."

It is apparent from a reading of paragraph (b) of subdivision 10 of section 876-a that the defendants are not included within the class therein defined, whereas, under the slightly different language of the Norris-LaGuardia Act, they would be so included. I hold, therefore, that section 876-a of the Civil Practice Act is inapplicable to the instant controversy.

As a second reason for the denial of the motion the defendant urges that the plaintiff has failed to show any facts constituting wrongful interference with the plaintiff's business. The plaintiff's affidavit alleges that

"On the 17th day of March, 1939, four men bearing placards reading, 'Do not patronize this Theatre, they refuse to employ Negro help. Negro Youth Association of Corona, 100–13 Northern Boulevard, Corona, New York,' began to patrol and did continuously patrol in front of the Theatre. Their patroling has at times caused crowds to congregate because some of the negro pedestrians cheer while others of them jeer the defendants.

"The continuous presence of defendants has caused a great many of the patrons to be led to believe that there is labor trouble and many of them before entering the theatre inquire whether it is safe to enter. Decreased receipts indicate that many of the theatre's patrons have been discouraged from entering the theatre by actual intimidation or by indirect fear in that said defendants have accosted patrons and told them not to go into that theatre, that the place was no good."

The defendants have vigorously denied that any prospective patrons have been molested, and admit only that pickets carrying placards have patroled in front of the plaintiff's premises. I believe the above-quoted paragraphs from the sole affidavit submitted by the plaintiff is insufficient to prove any wrongdoing by the defendants. "'Picketing' connotes no evil." (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260, 263.) Picketing may be restrained where the intent to injure rests solely on malice or ill will but it may continue where it is sought to attain some "purpose in the eye of the law thought sufficient to justify the harm that may be done to others." (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, *supra*, p. 263.) The purpose of the picketing herein has been held lawful by the highest court of the land (*New Negro Alliance* v. *Sanitary Grocery Company, Inc.*, *supra*), and, in the absence of proof of misconduct, no relief should be granted, as "The right of an individual or group of individuals to protest in a peaceable manner against injustice or oppression, actual or merely fancied, is one to be cherished and not to be proscribed in any well-ordered society." (*Julie Baking Co., Inc.*, v. *Graymond*, 152 Misc. 846, 847.)

Accordingly, the motion is denied, upon the condition, however, that no more than two pickets shall patrol the sidewalk in front of the plaintiff's premises, and, further, without prejudice to any application for a preference which may be made subsequent to the joinder of issue herein.