ROBERT E. HICKS CORPORATION et al.
v. NATIONAL SALESMEN'S TRAIN-
ING ASS'N, Inc.

Circuit Court of Appeals, Seventh Circuit.
June 6, 1927.

Rehearing Denied July 22, 1927.

No. 3840.

1. Injunction ⬅98(1)—Generally, court of equity will not enjoin publication of libel, in absence of acts of conspiracy, intimidation, or coercion.

Generally court of equity will not enjoin the publication of a libel, in the absence of acts of conspiracy, intimidation, or coercion, notwithstanding that false statements may injure plaintiff in his business or as to his property.

2. Injunction ⬅118(4)—Complaint to enjoin publication of libel, alleging conspiracy, without facts to sustain averments, or to show intimidation or coercion, held insufficient.

Complaint seeking to enjoin publication of libel, alleging in general terms that defendants formed and entered into a conspiracy, but failing to allege facts to sustain such averments, or to show intimidation or coercion, held insufficient to authorize jurisdiction in equity.

3. Injunction ⬅118(4)—Jurisdiction to enjoin libel cannot be predicated on averments of conspiracy, without setting out facts supporting averments.

Jurisdiction in equity to enjoin publication of a libel cannot be predicated on averments as to conspiracy, without alleging facts to sustain averments.

4. Injunction ⬅63—Equity will restrain third person from maliciously inducing or persuading one party to contract to violate it.

Equity will entertain a bill to restrain third persons from maliciously, and without legal excuse, inducing or persuading one party to a contract to violate it.

5. Injunction ⬅208—Injunction restraining defendants generally from making any false, defamatory, unfair, and misleading representations or statements, held too vague and uncertain (Clayton Act, § 19 [Comp. St. § 1243c]).

Injunction restraining publication of a libel enjoining defendants from continuing attacks on plaintiff's business by publishing certain articles theretofore threatened to be published, held too vague and uncertain, in violation of Clayton Act, § 19 (Comp. St. § 1243c), in that it generally forbids defendants from making any false, defamatory, unfair, and misleading representations or statements.

Appeal from the District Court of the United States for the District of Indiana.

Suit by the National Salesmen's Training Association, Inc., against the Robert E. Hicks Corporation and another. From a decree granting an injunction, defendants appeal. Reversed and remanded, with directions.

Perley H. Bishop, of Chicago, Ill., for appellants.

John T. Evans, of Chicago, Ill., for appellee.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. The appellee sued the appellants to enjoin them from making a "continued and continuous attack" upon appellee's business, by publishing alleged false and defamatory articles concerning it. The complaint is full of conclusions and repetitions. It is unnecessarily long, covering 29 printed pages of the record. In substance it alleges that appellee conducts a correspondence school, and teaches individuals the art of salesmanship, and during the past 19 years has acquired considerable property and built up a large and lucrative business; that it gets its students by means of its good reputation, the recommendation of students and others, and by means of advertisements published in the leading magazines in the United States; that it charges tuition fees for its courses, and that when its students enroll they sign a contract to pay such tuition in installments; that it maintains a free employment department, through which it finds employment for and furnishes employment to a large number of its students; that it also publishes a magazine, which accepts and publishes advertisements; that appellants publish a magazine devoted almost exclusively to the subject of salesmanship, especially to direct selling to consumer; that these two magazines, and three others circulating in the same field and devoted to the same subjects, are competitors; that appellants entered into a conspiracy to destroy appellee and its business and its magazine, and to accomplish this purpose they formed the plan of making a "continued and continuous attack" upon appellee and its business by means of articles published in their magazine, and by writing letters and making statements derogatory to appellee and its business; that in pursuance of said conspiracy, and in furtherance of said plan, appellants published a series of articles, and wrote letters, containing false, malicious, and libelous statements of and concerning appellee, its courses of study, its magazine, its advertisements, and the magazines which published said advertisements, and wrote letters and made statements to publishers and editors of magazines, urging them not to carry appellee's advertisements. It also sets forth at length

many publications, the like of which are sought to be enjoined in the future.

These publications make serious charges against appellee and its business, such as: Salesmanship cannot be taught by means of correspondence; success cannot be sold and delivered like a commodity; appellee advertises, not in express terms, but by implication, that it can and will procure lucrative employment for its students, and this service is offered as an inducement to prospective students to take this course in salesmanship, and thus it undertakes to sell success; it does not procure such positions, and hence does not deliver what it sells; it is selling a gold brick; such advertisements are dishonest and fraudulent; the persons using them are confidence destroyers, thieves, mail order crooks, direct selling jackals, frauds, crooks, vermin; they are taking money under false pretenses, and trading their honesty and their decency for dollars; their methods are thieving contracts and schemes; in one publication appearing in its magazine the appellee was guilty of forgery and dishonesty, and is a liar; and magazines and other publications which carry appellee's advertisements are parties to the fraud, and are vermin, crooks, and scoundrels.

It is further alleged that appellee's damages are irreparable; that, unless enjoined, appellants will continue their plan of attack, by continuing the publication of false and defamatory articles of a similar nature to those already published; and the prayer is that the appellants, and each of them and their representatives, "be enjoined and restrained from making or publishing in any future issues of their magazine or any other magazine or periodical the article or articles threatened to be published, or in any other way making, publishing, circulating or distributing any article, articles, writing or statements whatsoever in any way unfairly, misleadingly or falsely criticizing, reflecting upon or directly attacking appellee or its business or its methods or courses of study or advertisements, or intimidating or inducing or tending to intimidate or induce publishers or editors of magazines not to carry its advertisements, or students or prospective students not to take its courses of training or to discontinue the same, or to break their contracts with appellee or to refuse to make payments called for by such contracts."

The complaint was verified, and upon it, and three affidavits filed in support of it, the injunction was granted. It is enough to say of the affidavits that they in no way strengthen the legal effect of the complaint.

The decree complained of enjoins the appellants "from continuing an attack on appellee and its business, course of study and advertisements, by publishing in its November or any future issue of its magazine, or any other magazine or periodical, the article or articles of and concerning said appellee, and its business and methods, heretofore threatened by the appellants to be published in future issues of its magazine, and by publishing or circulating any articles or writings or statements whatsoever in any way falsely, unfairly, and misleadingly criticizing or reflecting upon said appellee, or its business, course of study, or advertisements, and from making any false, defamatory, unfair and misleading representations or statements directly or indirectly attacking the methods or business of the appellee."

[1] The appellants' principal objection to the injunction is that it enjoins the publication of mere libels, and that a court of equity is without jurisdiction to issue such injunction. The general rule is that a court of equity will not enjoin the publication of a libel. The operation of the rule is not affected by the fact that the false statements may injure the plaintiff in his business or as to his property, in the absence of acts of conspiracy, intimidation, or coercion. The appellee concedes this to be the rule, but contends that the averments of its complaint show such acts.

[2] While the complaint alleges, in general terms, that the appellants formed and entered into a conspiracy, and conspired to do and to continue the acts complained of, and that these acts were acts of intimidation and coercion, there are no facts alleged to sustain these averments. The appellants are the Robert E. Hicks Corporation and Robert E. Hicks. Hicks is averred to be the president of the corporation and the editor of its magazine. The alleged co-conspirators are the corporation and its president. The acts complained of are all alleged to be the acts of Hicks. These acts are the acts of Hicks individually, or as president of—that is, agent for—the corporation. There is no averment that any other officer or agent of the corporation acted with him. In Union Pacific Coal Co. v. United States, 173 F. 737, on page 745, the Circuit Court of Appeals of the Eighth Circuit said:

"But no case has been called to our attention that sustains the position that an agent of a corporation may alone form an unlawful combination between himself and his corporation by his thoughts and acts within the scope of his agency, without the knowledge

or participation of any other agent or officer of the corporation. If he may, the distinction between the commission of an offense and a combination to commit it by a corporation vanishes into thin air; for a corporation can act only by an agent, and every time an agent commits an offense within the scope of his authority under this theory the corporation necessarily combines with him to commit it. This cannot be, and it is not, the law. The union of two or more persons, the conscious participation in the scheme of two or more minds, is indispensable to an unlawful combination, and it cannot be created by the action of one man alone."

[3] If this be the law when the agent acts within the scope of his agency (for only within such scope is his act the act of the corporation), then, a fortiori, it must be so when he acts outside of his agency. It cannot be contended that it was within the scope of Hicks' agency, as president of the corporation, to publish libels for it. Jurisdiction in equity cannot be predicated upon the averments as to conspiracy. Nor are there any facts averred showing intimidation or coercion. It is alleged that certain things were done, and that such acts tended to and had the effect to intimidate students and magazines, but no threats or acts amounting to intimidation or coercion are averred. The complaint, therefore, does not bring the case within any of the recognized exceptions to the general rule. See American Malting Co. v. Keitel (C. C. A.) 209 F. 351, where the authorities are reviewed at length.

[4] Equity will entertain a bill to restrain third persons from maliciously, and without legal excuse, inducing or persuading one party to a contract to violate it. While the complaint alleges that the effect of the publication of the libelous articles will tend to induce students of appellee to discontinue its courses of study, and to fail and refuse to carry out their contracts with appellee, and to fail and refuse to make payments of money to appellee called for by said contracts, it nowhere alleges that by the libelous articles appellants attempt to persuade or induce students to break their contracts. Nor is there any provision in the injunction complained of prohibiting appellants from persuading or inducing the violation of contracts between its students or its advertisers and itself. The complaint sought, and the court granted, an injunction against the publication of mere libels.

[5] Appellants insist, also, that the terms of the injunction are too vague and uncertain. Section 19 of the Clayton Act (Comp. St. §

1243c) provides: "Every order of injunction or restraining order * * * shall be specific in terms, and shall describe in reasonable detail, and not by reference to the bill of complaint or other document, the act or acts sought to be restrained. * * * "

The injunction in this case does not refer to any averment of the bill of complaint, or other document, which, under the statute, would be insufficient, but it is even more general in terms than if it had so referred. As we have seen, the order enjoins appellants from continuing an attack on the appellee and its business, course of study, and advertisements, by publishing "the article or articles of and concerning said appellee, and its business and methods, heretofore threatened by the appellants to be published in future issues of its magazine, and by publishing or circulating any article or writings or statements whatsoever in any way falsely, unfairly, and misleadingly criticizing or reflecting upon said appellee or its business, course of study, or advertisements, and from making any false, defamatory, unfair, and misleading representations or statements directly or indirectly attacking the methods or business of the appellee." What attack upon its business and methods had been "heretofore threatened" is not set out, and no particular writings or statements criticizing or reflecting upon appellee or its business are set forth or described. In general terms it forbids appellants from making any false, defamatory, unfair, and misleading representations or statements directly or indirectly attacking the business or methods of the complainant. It is hard to see how an order of injunction could be less specific in terms than this.

Reversed and remanded, with direction to dissolve the injunction and dismiss the bill.