Fred A. Gariepy, Appellee, v. Max A. Springer, Appellant.

Gen. No. 42,436.

Opinion filed April 20, 1943.

THOMAS J. McCORMICK and B. M. STEINER, both of Chicago, for appellant; B. M. STEINER, of Chicago, of counsel.

VINCENT D. McCONNELL, of Chicago, for appellee; JOHN SPALDING, of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

Fred A. Gariepy filed a complaint in chancery seeking to restrain defendant, Max A. Springer, "from further issuing, uttering, mailing, preparing or causing to be prepared and mailed or delivered manually, or in any other manner," a certain circular alleged to be libelous, or any similar communication. A temporary injunction issued without notice. Thereafter defendant answered the complaint, and plaintiff filed an additional count for damages. Defendant then moved for trial by jury on the additional count, but his motion was denied and he was ordered to answer the additional count. The matter was thereafter referred to a master who, pursuant to a hearing, recommended that the injunction be made permanent, that plaintiff recover from defendant $2,000 as compensatory damages and $2,000 as punitive damages, together with costs of the proceeding, and that malice be found to be the gist of the action. After overruling defendant's exceptions to the master's report, the court entered a decree in accordance with the master's recommendations, from which defendant has taken an appeal.

From the essential allegations of the complaint it appears that Gariepy is a practising attorney in Chicago, in good repute, and that his sole source of livelihood is derived from the practice of his profession; that defendant, in an attempt to ruin him and deprive him of his means of livelihood, "has been and daily is continuing to publish and circulate" to plaintiff's clients, friends, lawyers, judges and others with whom plaintiff has business and social contact, the following reprint of an article appearing in the *Chicago Tribune* August 2, 1940, with a note prepared by defendant appended thereto:

" 'COURT OFFICER AGAIN ORDERED TO COUNTY JAIL. For the third time yesterday Attorney Victor P. Frank was ordered sent to the county jail on a citation for con-

tempt of court. He is accused of shortages totaling $5,569 in his accounts as a special Superior court commissioner. Yesterdays commitment was issued by Judge John S. Lewe for failure to turn over to the court $2,955 collected on a foreclosure sale. Under the contempt order Frank can be held in jail until the funds are repaid. A citation for a sanity hearing for Frank set for yesterday in County court, was withdrawn. The petition for the tests was filed July 25 by Frank's brother Seymour Frank. Frank was found in a coma in St. Luke's hospital last week.'

''Note: Mr. Victor P. Frank, 33 North LaSalle St. is associated with Mr. Frederick A. Gariepy, 1 North LaSalle St., Chicago, Ill.

''5000 copies—8/3/40.''

The complaint denies the truth of the note appended to the circular, states that Victor P. Frank is not an associate of plaintiff, and has never been employed by him. It is further alleged that on or about December 3, 1939 defendant composed, published and sent out the following telegram on the form of a Western Union blank: ''F. A. Gariepy, Shyster egomaniac megalomaniac hypocrite par excellence, 1 North LaSalle St.: On the approaching first anniversary of your and Mrs. Springer's complete success in dismembering and wrecking my family consisting of 4 minor children and your frustrated attempts by many diabolical means such as deliberately false statements separate maintenance conservator and insane declaration proceedings in order to ruin me financially and socially it behooves you to spend a day with your God praying for his forgiveness and may he have mercy on your soul. Max A. Springer,'' copies of which were mailed to some 20 persons. It is alleged that the communication ''is false, malicious, scandalous, scurrilous, and the same was sent out with the intent, purpose and design of doing great harm and injury to the plaintiff and de-

priving him of his livelihood and doing damage and injury to the plaintiff's standing, credit and position at the bar."

The complaint alleges that plaintiff is unable to continue the practice of law while such communications are being circulated by defendant; that the larger part of plaintiff's time each day is spent in explaining the communication to persons who interrogate him concerning it; that defendant, well knowing plaintiff's social contacts and his standing as an attorney, and "contriving and maliciously intending to injure the plaintiff and to bring him into public scandal and to disgrace and deprive him of his livelihood and to cause a loss of clients, income, business and social connections," has continued daily and will continue to send copies of the communication to a large number of plaintiff's clients, friends and associates, unless restrained from further so doing.

Assuming that the evidence adduced before the master substantially supports the salient allegations of the complaint with respect to the mailing of the alleged libelous communication to various persons and the receipt thereof, the social contacts and good repute of plaintiff as an attorney, the injury to his standing and prestige in the profession, and the inconvenience and embarrassment to which he has been subjected, the principal question presented is whether equity will enjoin the publication of an alleged libel. We had occasion to consider that question under similar circumstances in *Lietzman v. Radio Broadcasting Station W.C.F.L.*, 282 Ill. App. 203, wherein plaintiff unsuccessfully sought to enjoin publication of statements concerning his labor policies by means of daily radio broadcasts. His complaint was predicated on the theory that the publication of the alleged libelous statements was intimidating, coercive, made in pursuance of a conspiracy among the broadcasting company, its officials and others, and calculated to injure

plaintiff's business and profession. It was there contended that the libel was continuing in its nature, incidental to the conspiracy to injure plaintiff, and that it should therefore be enjoined. After reviewing the allegations of the complaint we concluded that since the alleged false statements and the objectionable matter in the broadcast did not amount to coercion or intimidation in law, and since such statements were not made in pursuance of a conspiracy, equity would not afford injunctive relief against the publication of a mere scandal or libel, and we reviewed and discussed numerous decisions, State and Federal, announcing the settled law of practically every jurisdiction in this country, including Illinois, that equity will not ordinarily enjoin libel or slander defaming the credit and business standing of an individual or corporation. High on Injunctions, 4th ed., vol. 2, sec. 1015, states that "courts of equity would not restrain the publication of libels or works of a libelous nature, even though such publications were calculated to injure the credit, business, or character of the person aggrieved, and that he would be left to pursue his remedy at law." In Pomeroy's Equity Jurisprudence, 2nd ed., vol. 5, sec. 2050 (sec. 629), the author states that "Equity will not restrain by injunction the threatened publication of a libel, as such, however great the injury to property may appear to be," citing the early case of *Francis v. Flinn,* 118 U. S. 385, wherein Mr. Justice FIELD said: "If the publications in the newspapers are false and injurious, he can prosecute the publishers for libel. If a court of equity could interfere and use its remedy of injunction in such cases, it would draw to itself the greater part of the litigation properly belonging to courts of law." In another case cited by Pomeroy, *Kidd v. Horry,* 28 Fed. 773, decided in 1886, an injunction was asked to restrain the defendants from publishing certain circular letters concerning the business of the complainants. The injunction was re-

fused, and the court after reviewing various cases, concluded that the "law clearly is that the court of chancery will not interfere, by injunction, to restrain the publication of a libel; . . . . We do not think that the existence of malice in publishing a libel, or uttering slanderous words, can make any difference in the jurisdiction of the court. Malice is charged in almost every case of libel, and no cases of authority can be found, we think, independent of statute, in which the power to issue an injunction to restrain a libel or slanderous words has ever been maintained, whether malice was charged or not. Charges of slander are peculiarly adapted to and require trial by jury; and exercising, as we do, authority under a system of government and law which by a fundamental article secures the right of trial by jury in all cases at common law, and which by express statute declares that suits in equity shall not be sustained in any case where a plain, adequate, and complete remedy may be had at law, as has always heretofore been considered the case in causes of libel and slander we do not think that we would be justified in extending the remedy of injunction to such cases." In *Citizens' Light, Heat & Power Co. v. Montgomery Light & Water Power Co.* (C. C.), 171 Fed. 553, the court pointed out that the difficulties in the way of affording injunctive relief against libel and slander are insurmountable, and grow alike out of constitutional provisions and want of jurisdiction in the court of equity; they cited various cases holding that the jurisdiction of equity does not extend to libels and where courts have refused injunctions to restrain their publication. In *American Malting Co. v. Keitel*, 209 Fed. 351, the court quoted from *Vassar College v. Loose-Wiles Biscuit Co.*, 197 Fed. 982, wherein a bill seeking to restrain a libel was dismissed with the statement that " 'In this country a court of equity is without jurisdiction to restrain the publication of a libel.' " It was pointed out in the *American Malting*

case that courts have sometimes issued injunctions to restrain the publication of false statements injurious to business or property, but that cases in which such jurisdiction was assumed were those which involved conspiracy, intimidation or coercion.

In the case at bar neither the allegations of the complaint nor the proof adduced before the master charge or show either conspiracy, intimidation or coercion, and therefore this proceeding resolves itself into the question whether the court was warranted in exercising its equitable power to restrain the alleged libelous communication. Plaintiff stresses the point that defendant's conduct in mailing numerous copies of the communication to plaintiff's friends, clients and associates at the bar amounted to a continuing libel, and he argues that there is no adequate remedy at law against the assault upon his reputation as an attorney for honesty and integrity, and the resultant injury to his means of livelihood from his profession. It should be noted, however, that there is no proof indicating any threat on the part of Springer to continue publishing the alleged libelous matter, and the finding in the decree that "the plaintiff has been humiliated, embarrassed and disgraced and has suffered and will continue to suffer irreparable damage and loss of large sums of money," is not supported by any allegation in the complaint or proof adduced in support thereof that defendant had *threatened* to continue the publication. It would be difficult to find a reported case where the publication of an alleged libel was more continuous than in the *Lietzman* case, wherein the defendant broadcasting station repeated the statements almost every day for a considerable period of time; nevertheless, we were constrained to sustain the decree dismissing the complaint, in conformance with the overwhelming weight of authority that equity is without jurisdiction to restrain the publication of a libel, except in cases involving conspiracy, intimidation or

coercion. None of these factors enters into the case at bar.

The principal remaining question is whether the court erred in denying defendant the right of trial by jury. When the original complaint was filed it was simply an action in equity seeking an injunction to restrain defendant from further publishing the alleged libelous matter, and it is conceded that when defendant entered his appearance he had no right to demand a trial by jury, or if he had done so, it would have been entirely discretionary with the chancellor whether he would direct any of the issues to be so tried, and a verdict by a jury would have been purely advisory. The original suit was instituted August 14, 1940, and the additional count at law, which was identical with the original complaint, except that it sought damages, was filed December 20, 1940. The record shows, however, that leave to file the additional count was not had until May 14, 1941, nine months after the original suit for injunction was instituted. Defendant then immediately made an oral motion for trial by jury. That motion was on the same day summarily denied, and an excerpt from the report of proceedings, as amended, filed October 7, 1942, states that the chancellor denied the motion for a jury demand on the following ground: "The reason for the said order denying the motion by defendant was that the defendant, when he entered his appearance, was bound to know that the plaintiff might during the progress of this suit obtain leave to file additional counts at law or in equity and that, nevertheless, the defendant entered his appearance without demanding trial by jury as is by statute provided." Plaintiff concedes that the reason assigned is untenable, but he argues that "(a) There was no proper demand for a trial by jury by the defendant; (b) The defendant waived any right to jury trial by acquiescing in the reference of the cause to a master in chancery; [and] (c) There were no severable issues raised by the Additional Count and equity properly did com-

plete justice." With respect to the first of these contentions, it is argued that defendant failed to make his demand in writing and to pay the appropriate fee to the clerk of the court, as provided by section 64 of the Civil Practice Act (Ill. Rev. Stat. 1941, ch. 110, par. 188 [Jones Ill. Stats. Ann. 104.064]) and section 33 of the Fees and Salaries Act (Ill. Rev. Stat. 1941, ch. 53, par. 51 [Jones Ill. Stats. Ann. 48.034]). It appears, however, that he had no opportunity to do either of these things. The order giving plaintiff leave to file an additional count *instanter* contained the provision, "and defendant's resistance and motion for a jury trial is denied." That was evidently defendant's first intimation that the additional count would be filed, and he had no alternative except to make the motion for jury trial orally, and no opportunity to pay the fees before the order was entered. Having demanded a jury at the earliest possible moment after being confronted with a suit for damages, as to which he was entitled to a trial by jury, it is difficult to conceive that he could have asserted the right guaranteed him by the constitution, as well as the law of the State, at any earlier time.

The contention that there were no severable issues raised by the additional count, and that "equity properly did complete justice," is likewise untenable. The original complaint was for injunctive relief. The additional count sought damages, both compensatory and punitive. Plaintiff certainly intended to treat the count at law as distinct from the count in equity, and the court evidently decided that the two causes of action were distinct, for it did not refuse a jury trial on the ground that the two counts could be tried together as a proceeding in equity, but for the reason heretofore set forth.

The remaining ground upon which the denial of trial by jury is sought to be justified is defendant's alleged waiver by proceeding to a hearing before the master. However, he had no other recourse. Having demanded

trial by jury and being denied that right by the court's order, he was obliged to proceed with the hearing before the master. Plaintiff cites and relies on *Mulloy v. Consoer, Older & Quinlan, Inc.*, 301 Ill. App. 609 (Abst.), for support of the proposition advanced. That case is not applicable to the proceedings at bar because the parties there both agreed to the entry of an order appointing a referee, and the court rested its conclusion that plaintiff was not entitled to a trial by jury upon an order indicating that such an agreement had been made. In the case at bar the court did not refer the cause to a master for hearing until after defendant's motion for a jury was denied. Having insisted upon a trial by jury and having preserved his objections to the court's denial, it was not necessary for defendant to object to every other step that took place during the progress of the case.

During the pendency of this cause plaintiff moved to dismiss the appeal for failure to file certain reports of proceedings within the time provided under the rules of this court. That motion is denied.

For the reasons indicated, we are of opinion that that portion of the decree which permanently enjoined defendant from further issuing, uttering, mailing, or causing to be prepared and mailed, or delivered manually or in any other manner, the communication in question, or any similar communication, should be reversed, and it is so ordered. With respect to the additional count, we hold that defendant was entitled to a trial by jury, and that he made his demand in apt time, and that such right was wrongfully denied him. Therefore, the decree awarding plaintiff damages under count two, is reversed and the cause remanded with directions that defendant be allowed a jury trial upon payment of the statutory fee, and that such further proceedings be had under that count as are not inconsistent with the views expressed herein.

*Motion to dismiss the appeal denied; that portion of the decree permanently enjoining defendant reversed; that portion of the decree awarding plaintiff damages under count two reversed and cause remanded with directions.*

SULLIVAN, P. J., and SCANLAN, J., concur.