Daniel E. Fitzpatrick, J.
Plaintiff moves, pursuant to CPLR 6301, for an order enjoining the defendants, pendente lite, “ from picketing the premises of this plaintiff in a manner threatened by them to urge prospective tenants not to rent and otherwise interfere with the business of the plaintiff ”.
The complaint, which contains a single cause of action, and the exhibits annexed to and made a part thereof, disclose the following. Plaintiff is the landlord of a garden apartment development, in which all of the named defendants are tenants, and maintains a management office for said development at 67-01 Springfield Boulevard in this county.
On November 17, 1964 defendants wrote to Mr. Max Fischer, secretary of the plaintiff, as follows:
“We the undersigned have several long-standing complaints that we insist be attended to:
“1. We insist upon radiator valves that can be adjusted fully.
“ 2. We insist that you correct or replace your foul-smelling, smoke-producing furnace.
“3. We insist that you board up the many open basement windows that any child can fall into, and in general keep the development in a reasonable state of repair. It is criminal negligence to leave those basement windows unboarded.
“ We intend to withhold rent payment until these items are attended to. We choose to believe that you would prefer to meet your responsibilities rather than go to court to try to collect the rent.
*883 “ We also intend to see that the Fire and Health departments cite you again for your violations.
“We further intend to picket your office on Saturdays and Sundays to urge prospective tenants not to rent here and to inform the public as to the wretched conditions prevailing.”
By reply dated November 20, 1964, plaintiff’s attorney attempted to dissuade defendants from the threatened picketing. By letter dated November 21, 1964, however, defendant Hochman stated to Mr. Fischer, in pertinent part, that ‘' I will be picketing your office because of my grievances on Sunday, November 29, unless all our complaints are satisfied. ’ ’ Defendant Wecker also signed that letter.
Defendant Hochman, continues the complaint, was a resident of the premises pursuant to a 3-year lease which was renewed for 11 months commencing on October 1, 1964. Said defendant, as well as all other named defendants, know that none of the radiators within the entire development of 1,400 apartments has radiator valves which can be controlled by the tenants. This hot-water system was installed at the time these premises were constructed pursuant to approved plans filed with the various departments of the City of New York as well as with the office of the Federal Housing Administrator.
Defendants have stated their intention to picket plaintiff’s premises to exert pressure to compel plaintiff to give services not provided for in their respective leases nor anticipated as an obligation of the plaintiff at the time said leases were executed.
Plaintiff concludes with the allegation that if defendants are permitted to picket its management office plaintiff will sustain irreparable damage for which it has no adequate remedy at law and demands a judgment (1) declaring that the nature and purpose of the picketing threatened by defendants are unlawful and (2) permanently enjoining defendants from picketing plaintiff’s office for the purpose of urging prospective tenants not to rent and otherwise interfering with its business operation.
In his supporting affidavit Mr. Fischer repeats the substance of the foregoing and adds the following. Ninety per cent of the apartment rentals in plaintiff’s premises result from the apartments’ being shown to prospective tenants on Saturdays and Sundays after such tenants first appear at plaintiff’s management office. From that same office premises are rented for apartments belonging to three other corporations. All of the burners in the development were completely overhauled with retubing and welding and safety equipment placed therein during the Summer months, as is the normal procedure, and there is no foul-smelling, smoke-producing furnace on the premises *884 at the present time, nor was there any such furnace on the premises at the time defendants wrote their letter of November 17, 1964 nor has there been any from- the time defendant Hochman renewed his lease on October 1, 1964 to date. The broken basement .windows are the result of vandalism by a number of children of the tenants in the development and said conditions cannot always be corrected immediately. Defendants’ remedy, concludes Mr. Fischer, is not by unilateral action on their part, but by recourse to the courts or to the administrative bodies charged with the duty of seeing that conditions such as those complained of are corrected.
The opposing affidavits of defendants Hochman and Wecker disclose that they did in fact picket plaintiff’s office for about one and. one-half hours on Sunday, November 29, 1964, carrying signs reading as follows:
“a) SPRINGFIELD BATSIDE CORP: STOP THE FOUL SMELLING FUMES FROM THE BURNER;
“ b) SPRINGFIELD BATSIDE CORP: REPAIR THE PLAT AREAS. RID THEM OF BROKEN GLASS, BROKEN SLIDES AND JAGGED SEE-SAWS;
“ c) SPRINGFIELD BATSIDE CORP: GIVE ME RADIATORS I CAN CONTROL.”
In support of this motion, plaintiff relies principally upon West Willow Realty Corp. v. Taylor (23 Misc 2d 867, app. dsmd. 10 A D 2d 1002); Saxon Motor Sales v. Torino (166 Misc. 863) and Wolf v. Gold (9 A D 2d 257). Defendants Hochman and Wecker, in turn, rely principally upon Julie Baking Co. v. Graymond (152 Misc. 846); Bakery Drivers Local v. Wohl (315 U. S. 769); Exchange Bakery & Rest. v. Rifkin (245 N. Y. 260) and Anora Amusement Corp. v. “ John Doe ” (171 Misc. 279).
The court assumes, for the purposes of this application, that the statements contained on the placards carried by defendants Hochman and Wecker on November 29 are true and that the picketing was peaceful. Nevertheless, the court is of the opinion that a preliminary injunction should issue.
None of the cases cited above, nor any other case which has come to the attention of the court, has specifically passed upon the precise question presented. (See, generally, Ann. 93 ALB 2d 1284.) - All of the cited cases are distinguishable. In West Willow Realty Corp. v. Taylor defendant, who had purchased a home from a corporation which was not a party to that action, was enjoined pendente lite from picketing the entrance to the development of the corporate plaintiff since defendant’s words and conduct were obviously designed to intimidate plaintiffs *885 and to coerce a settlement of defendant’s claims and pending action against his vendor. In Saxon Motor Sales v. Torino defendant, a disgruntled purchaser of an automobile from the plaintiff, was enjoined pendente lite from parking that automobile, derisively marked, in front of plaintiff’s place of business. In Wolf v. Gold, which involved a motion to dismiss a complaint for legal insufficiency, the court held as sufficient to constitute a cause of action for injunctive relief allegations that defendants, by false statements and other illegal means, were engaged in a deliberate plan to destroy the business and reputation of plaintiffs.
As for the cases cited by defendants, two (Bakery Drivers Local v. Wohl and Exchange Bakery & Rest. v. Rifkin) involved labor matters. In Julie Baking Co. v. Graymond the court refused preliminarily to enjoin defendants, who were peacefully picketing in protest against what they regarded as extortionate prices for the necessities of life, and in Anora Amusement Corp. v. “ John Doe ” the court refused, on certain conditions, to enjoin defendants from picketing plaintiff’s premises and urging the public not to patronize the plaintiff because it refused to employ Negro help.
“ A state is not required to tolerate in all places and all circumstances even peaceful picketing by an individual.” (See Bakery Drivers Local v. Wohl, supra, p. 775.) It is not difficult to imagine the disorder which would result if, in the City of New York, every tenant with even an honest complaint, trivial or substantial, saw fit and was permitted to picket his landlord’s premises. The irreparable damage which may — indeed, probably will — be sustained by a landlord in this type of case far exceeds any inconvenience to which a tenant would be subjected if he were restricted to less drastic remedies.
Labor and civil rights cases aside, the element which seems to distinguish the cases in which peaceful picketing has been enjoined from the cases in which such picketing has not is that the relationship between the parties in the former group of cases had its origin in contract while that between the parties in the latter group did not. Where the relationship between the parties to a private dispute has its origin in contract, it does not seem too much to require them to seek performance of the obligations deemed due under such contract in the courts, unless otherwise provided in the contract. If the obligation sought to be imposed is not due under the contract, then no party thereto should be permitted to obtain its performance by economic coercion such as picketing. To the extent that the obligation is not due under *886 the contract but is one imposed by a municipality, then it would seem to be in the interest of maintaining a peaceful, orderly society in a city such as the City of New York that redress should be sought through the respective municipal departments specifically established for such purpose. (Cf. People v. Kopezak, 153 Misc. 187, affd. 266 N. Y. 565.) Unilateral, coercive action, calculated and likely to inflict economic damage far more severe than warranted by even the most justifiable complaint of the type here involved should not be permitted.
That defendants are seeking economically to coerce the plaintiff into meeting their demands is obvious from the fact that defendants Hochman and Wecker have picketed plaintiff’s management office, which is about a block-and-a-ihalf from the premises in which most of the defendants reside. It would seem that defendants are picketing that office “ for the sole purpose of attempting to injure the plaintiff’s business and to curtail [its] profits.” (Saxon Motor Sales v. Torino, 166 Misc. 863, supra.)
So far as defendant Hochman is concerned, he knew of most of the conditions complained of when he renewed his lease for 11 months. True, he explains that the press of school activity compelled him to continue the tenancy until a more convenient moving date, but his pre-existing knowledge is a factor which this court deems important in passing upon the equities of the instant application.
Significant, too, is the fact that three other corporations also rent apartments from the management office where defendants Hochman and Wecker have picketed and may well be damaged as a result of said defendants’ activity. (Cf. West Willow Realty Corp. v. Taylor, 23 Misc 2d 867, supra.)
It seems fair to say that tenants are no longer the economic captives of landlords they once may have been. To the extent that no remedy is available to them under the law of landlord and tenant or in any municipal department, they are, at the termination of their existing leases, free to renew or not as they choose.
In any event, preliminary injunctive relief will do no more than avoid the infliction of irreparable injury upon the plaintiff prior to the determination of this action on the merits. (>CPLR 6301, 6312, S'Uibd. [a].)
Accordingly, plaintiff’s motion for a preliminary injunction is granted — to the exent of enjoining the picketing of plaintiff’s management office or premises — as to the defendants who have been duly .served with process in this action as well as with the papers on this motion, on condition that plaintiff furnish a surety *887 undertaking in the sum of $1,000 as to each defendant so served and on the further condition that plaintiff place this action on the calendar for trial on January 11, 1965, subject to the approval of the Justice presiding.