32661, 32662. PITTMAN et al. v. COHN COMMUNITIES, INC.; and vice versa.

MARSHALL, Justice.

The defendant-appellants, husband and wife, are disgruntled homeowners who placed two signs in their yard stating, *"Before* you buy in Sunwood talk to this dissatisfied owner."* The plaintiff-appellee is the developer of Sunwood, the residential subdivision in which the appellants live.

The trial court issued a temporary restraining order ordering the defendants to remove the sign. Following a rule nisi hearing, the court entered an interlocutory injunction restraining the defendants from replacing the signs or from inviting prospective homeowners to consult with them before purchasing homes in Sunwood, from which they appeal. The injunction, as entered, far exceeded the equitable powers of the trial court. Accordingly, the order of the court granting the interlocutory injunction must be reversed.

The facts of this case and course of the litigation below are as follows:

On July 13, 1976, the appellants, Dr. and Mrs. Pittman, entered into a contract of sale with Cohn Communities, Inc., the appellee, for the purchase of a house on Lot 10, Block A, in Sunwood Subdivision. At the hearing below, the appellants stated that one of the reasons they had purchased this residence from the appellee was because the adjacent lots were in their natural, undeveloped state. They maintained that one of the appellee's agents had orally promised them that the appellee did not intend to build on these lots and, in this

manner, induced them to enter the contract.

Pursuant to one of the provisions of the contract of sale, the appellee submitted to the appellants a "letter of intent" not to develop the lots adjacent to theirs. The letter stated in material part:

"Please be advised that 'at this time' it is not the intent of Cohn Communities to do any building on Lots 9, Block A and/or Lot 11, Block A (lots on either side of the property you are purchasing).

"However, this does not mean that construction in the future will not take place by another builder or possibly even Cohn Communities. Our company was not satisfied with the perculation [sic] tests received on either of those two lots, but if sometime in the future, the owner of said lots should correct this situation, we might consider purchasing said lots."

On October 13, 1976, the sale between the appellants and the appellee was closed. On April 11, 1977, the appellee notified the appellants that percolation problems on Lot 9-A had been resolved and that it would begin construction of a house on that lot. The appellee began moving equipment onto the lot and commenced excavating it. On April 16, the appellants placed two signs in their front yard. Each sign measured two feet wide by three feet high, and contained in large letters the following inscription: *"Before* you buy in Sunwood talk to this dissatisfied owner."

On April 26, the appellee filed a complaint in superior court asking that appellants be permanently enjoined from "displaying said signs, or any other like publication on their property." The complaint alleged that the language on the signs was libelous per se and that the signs were placed by the defendants on their property "wilfully, maliciously, and with the intent and purpose of injuring the Plaintiff and its business. . . and in an effort to intimidate the Plaintiff into ceasing plans to begin construction of a house on Lot 9-A." The complaint further alleged that the signs did prevent the public from trading with the plaintiff and did result in an irreparable injury to the plaintiff's property rights and reputation.

At the hearing below, the parties stated to the court that in view of the fact that the appellee had filed a suit for

slander against the appellants, an injunction pendente lite, rather than a permanent injunction, was being sought. On May 25, the court entered the following order: "The Interlocutory Injunction sought by the plaintiff is granted and the defendants' agents, servants and those acting for them and on their behalf as well as their transferees entitled to their land are hereby enjoined from replacing these signs on the defendants' property or any other property in the subdivision. The defendants' agents, servants or employees or those acting for them, their transferees are further enjoined from placing similar signs of the same import or inviting prospective homeowners to consult with the defendants before purchasing homes in this subdivision."

On June 1, the court supplemented the preceding order with findings of fact and conclusions of law. By these findings and conclusions, the court ruled that this case was not one for libel, but rather for a tortious invasion of the plaintiff's right of enjoyment of private property under Code § 105-1401, citing *Roughton v. Thiele Kaolin Co.,* 209 Ga. 577, 581 (3) (74 SE2d 844) (1953) and *Dowdell v. Cherry,* 209 Ga. 849 (76 SE2d 499) (1953).

The defendants appeal. *Held:*

The placing of this sign on the appellants' property is a form of communication entitled to constitutional protection under the First Amendment notwithstanding the trial court's designation of this act as an unlawful interference with the enjoyment of the appellee's property. See Organization for a Better Austin v. Keefe, 402 U. S. 415 (91 SC 1575, 29 LE2d 1) (1971). See also Linmark Assoc. v. Willingboro, — U. S. — (97 SC 1614, 52 LE2d 155) (1977).

Even assuming for the purposes of argument that the conduct of the appellants in putting up these signs is actionable under Code § 105-1401 (cf. Carter v. Knapp Motor Co., 243 Ala. 600 (11 S2d 383) (1943)), that Code section requires the act of interference with the right of another's enjoyment of private property to be "unlawful." The appellee argues that the acts complained of are unlawful by reason of their libelous nature. Therefore, we must determine the legality of the interlocutory injunction entered in this case by reference to the rules

governing the enjoining of a libel.

While there is a paucity of Georgia case law on point, the very few of our cases treating this subject state flatly and unequivocally that equity will not enjoin libel and slander.

"Equity will not restrain a publication upon the ground merely that it is false and tends to injure business of the plaintiff... The Constitution of the State of Georgia grants to every citizen the right to speak or write what he pleases, he being accountable for injuries sustained by others by reason of his abuse of this privilege." *Singer Mfg. Co. v. Domestic Sewing Machine Co.*, 49 Ga. 70, 72 (1873). "It is well settled that an injunction will not be granted to restrain slander or libel of title or of reputation ... Not that it is not a wrong, not that the wrong might not be irreparable, but simply because Courts of chancery, in the exercise of the extraordinary powers lodged in them, have uniformly refused to act in such a case, leaving parties to their remedy at law." Id. p. 73. *Dean v. Bolton,* 235 Ga. 544, 548 (221 SE2d 20) (1975).

In other jurisdictions there exist a few exceptions to the traditional rule prohibiting an injunction against a libel or slander. Injunctions have issued to prevent irreparable injury to one's trade or business where the defamatory utterances were made with actual malice and as part and parcel of an unlawful scheme involving either a conspiracy to injure or coercion or intimidation. See Carter v. Knapp Motor Co., supra; Menard v. Houle, 298 Mass. 546 (11 NE2d 436) (1937); Saxon Motor Sales v. Torino, 166 Misc. 863 (2 NYS2d 885) (1938) (enjoining purchasers from adorning their cars with lemons or other disparaging symbols); Springfield Bayside Corp. v. Hochman, 44 Misc.2d 882 (255 NYS2d 140) (1964) (restraining irate tenants from picketing their landlord); Mazzocone v. Willing (Pa. Super.), 369 A2d 829 (1976) (restraining a dissatisfied client from picketing the office of her erstwhile attorney). See generally 42 AmJur2d 890, Injunctions, §§ 135-137; 43 CJS 679, Injunctions, § 134. However, the lack of any uniform rule in this area is verified by the action of other courts in denying injunctions under similar circumstances. See Stansbury v. Beckstrom, 491 SW2d 947 (Tex. Civ. App. 1973);

Schmoldt v. Oakley, 390 P2d 882 (Okl. 1964); Greenberg v. De Salvo, 254 La. 1019 (229 S2d 83), cert. den., 397 U. S. 1075 (90 SC 1521, 25 LE2d 809) (1969); Kwass v. Kersey, 139 W. Va. 497 (81 SE2d 237) (1954); Gariepy v. Springer, 318 Ill. App. 523 (48 NE2d 572) (1943).

Whether viewed as controlled by the rule itself or by the prior exception, the grant of the interlocutory injunction in this case was improper. The appellee has simply failed to show that it would be irreparably harmed by the sign on the appellants' property stating that they are dissatisfied owners and inviting other prospective owners to engage in discussions. We note, in addition, that the interlocutory injunction was granted pending a suit filed by the appellee for slander and not libel.

Since we have determined that the injunction must be dissolved in its entirety, it is unnecessary to discuss its overbreadth. In regard to the constitutional issues raised by this case, it is sufficient to state in addition that the party seeking to justify a prior restraint on speech carries a heavy burden and that this burden has not been met in the present case.

*Judgment reversed. All the Justices concur, except Bowles, J., who concurs in the judgment only.*

SUBMITTED AUGUST 12, 1977 — DECIDED NOVEMBER 1, 1977.

*Bell & Desiderio, Howard B. Wexler,* for appellants.
*Levine, D'Alessio & Cohn, Burgess W. Stone,* for appellee.