39664. TURNER ADVERTISING COMPANY v. GARCIA et al.
39748. RUTLAND et al. v. GARCIA et al.

HILL, Chief Justice.
Guy W. Rutland III, trustee for the M. C. Profit Sharing Plan, Chris V. Brigman, and Robert W. Hughes (hereinafter the lessors) own certain property located on Peachtree Parkway in Norcross, Georgia. Frances Rees Garcia and Emily Walsh Carnes (hereinafter the plaintiffs) own certain property which is adjacent to that belonging to the lessors. The lessors purchased their property from a successor in title to Peachtree Corners, Inc. (hereinafter the developer); plaintiffs purchased their property from the developer. All of this property is subject to recorded restrictive covenants, one of which reads as follows: " *Signs* : No signs whatsoever (including but not limited to commercial, political, and similar signs) shall be erected or maintained on the Property except: 1. Such signs as may be required by legal proceedings; 2. Such signs as may be approved by

the Committee." The Committee referred to is the Peachtree Corners Design Control Committee. Guidelines referred to in the covenants specify which signs will be permitted; advertising of businesses not located on the premises is not permitted.

The lessors entered into a ground lease with Turner Advertising Company (TAC) giving TAC the right to erect and maintain an outdoor advertising sign on their property for 10 years, for an annual rent of $3600.00. On Monday, June 21, 1982, TAC began construction of the sign. On Tuesday, plaintiff Carnes noticed the construction activity. On Wednesday she learned that an outdoor advertising sign was being erected. She attempted to call the lessors but was unable to reach them; Brigman returned her call on Thursday. He told her that the construction activity was nothing to worry about, that it was just a sign. She then called her attorney. Her attorney called Brigman that same day and advised him that the sign was prohibited by the restrictive covenant; he told Brigman the deed book and page number where the covenant was recorded. He also suggested to Brigman that he might want to cease construction until the matter could be resolved, making it clear that his client intended to attempt to enforce the restrictive covenant. The following day, Friday, the attorney called TAC with the same information and also sent TAC a confirming letter. The construction activity continued, and the sign was completed that same day, Friday, June 25, 1982.

On July 6, 1982, plaintiffs filed suit against the lessors and TAC seeking injunctive relief.[1] During the pendency of the suit, the Committee informed TAC that it disapproved the sign. After a hearing, the trial court entered a temporary injunction restraining the defendants from adding to, improving or in any way changing the sign until a final hearing and determination could be had. Plaintiffs moved for summary judgment but the trial court properly set the matter down for hearing on the permanent injunction. See *King v. Ingram,* 250 Ga. 887 (302 SE2d 105) (1983). On January 11, 1983, the trial court entered a final injunction ordering that the sign be removed within 10 days. The landowners and TAC appeal. For the reasons stated below, we affirm.

1. The declaration of restrictive covenants at issue in this case was made and recorded in 1973 by the developer. It establishes the Peachtree Corners Design Control Committee, and gives the address of the Committee as 1000 South Buford Highway, Norcross, Georgia,

---

[1] TAC answered and filed a cross-claim against its co-defendants Brigman and Hughes, in which it alleges that they failed to inform TAC of any relevant restrictive covenants. Apparently this claim is still pending.

30071. A publication entitled "Peachtree Corners Design Guidelines" gave the address of the Committee as 3320 Holcomb Bridge Road, Norcross, Georgia, 30071. Testimony given at trial by the chairman and another member of the Committee established that the Committee had moved from the South Buford Highway address over five years ago, and from the Holcomb Bridge Road address some two years ago. Thus the defendants argue that the failure of the developer to amend the declaration to show the Committee's correct address excuses compliance with the restrictive covenant at issue.

Brigman testified that he was aware of the restrictive covenants when he purchased the property in 1981 and the record shows that the restrictive covenants were incorporated by reference in the deed conveying the property to the lessors. Brigman testified that when he and Hughes were approached by TAC, they attempted to contact the Committee but were unable to do so. He did not contact the developer, which was listed in the phone book and of whose existence he was aware. The trial court found in effect that the lessors could have contacted the developer and through it could have contacted the Committee. The evidence supports these findings. In view of the fact that the developer was at all times readily accessible to the lessors, we affirm the trial court's findings that the developer's failure to amend the restrictive covenants to show the current address of its Committee did not excuse compliance with the restrictive covenant at issue.

2. Paragraph VI of the restrictive covenants provides that no improvement or other alteration of the exterior appearance of the property shall commence until plans have been submitted to the Committee and approved. Upon failure of the Committee to act within 30 days of receiving the plans, approval is presumed. Upon completion of any improvement, the property owner may file a notice of completion with the Committee. Upon failure of the Committee to give notice of noncompliance or noncompletion or to commence legal action to enforce compliance or completion within 30 days, compliance is presumed.

On October 20, 1982, lessors' notice of completion together with copies of the plans and specifications were delivered to the Committee. By letter dated August 5 the Committee had already informed the lessors that it disapproved the sign. That letter pointed out that the Committee was bound by the Peachtree Corners Design Guidelines, that these guidelines provided that signs directing attention to businesses, commodities or services not normally available on the premises where the sign was located were prohibited, and that the Committee therefore had "no choice but to disapprove

the sign."

Notwithstanding the clarity of the Committee's position, the defendants argue that the failure of the Committee to respond to their notice of completion results in a waiver of the restrictive covenant. We note that even if there were any merit to this argument, the most that would result from the Committee's inaction is a presumption of compliance, not a waiver of the restrictive covenant. But we conclude that no presumption arose, because Paragraph VI contemplates that the notice of completion be filed with reference to work the plans for which have already been submitted to the Committee and approved. Here there had been no prior approval of the plans and the sign itself had been disapproved. Thus this enumeration of error has no merit.

3. The trial court's findings that the plaintiffs do not have unclean hands and are not guilty of laches are supported by the evidence and are not contrary to law. Defendants' enumerations based upon unclean hands and laches demonstrate no error.

4. The defendant contends that the trial court erred in not empanelling a jury to render special verdicts. Although a trial court trying a suit for injunction may empanel a jury to render special verdicts, the court is not required to do so. *Guhl v. Davis,* 242 Ga. 356, 358 (249 SE2d 43) (1978). In view of the fact that, as we have previously held, there is no right to a jury in a suit for injunction, this enumeration of error is without merit. *Cawthon v. Douglas County,* 248 Ga. 760, 763 (286 SE2d 30) (1982).

5. Finally, TAC contends that the trial court abused its discretion in entering, on motion of the Committee members, an order which requires TAC to pay up to $500 of the costs associated with producing the documents requested in TAC's subpoena duces tecum although such costs would be extravagant and unnecessary. TAC argues that clerical employees could have located the subpoenaed documents, but the subpoenas required the Committee members to vouch for compliance with the subpoenas. However, because there is no transcript of the hearing on the motion for a protective order, this enumeration presents nothing for review.

*Judgment affirmed. All the Justices concur, except Smith, J., who concurs in the judgment only.*

DECIDED MAY 11, 1983 —
REHEARING DENIED JUNE 1, 1983.

*Schreeder, Wheeler & Flint, David H. Flint, John A. Christy,* for appellant (case no. 39664).

*Henry & Henry, Patrick J. Henry, Jr.,* for appellants (case no.

39748).

*Winship E. Rees,* for appellees.