43025. BRANNON v. AMERICAN MICRO DISTRIBUTORS, INC. et al.
(342 SE2d 301)

SMITH, Justice.

The appellant, Jack Brannon, was the president and major shareholder of the appellee, American Micro Distributors, Inc. He sold the company to Technical Marketing Systems, Inc., and entered into a three-year employment agreement in which he was named president of the appellee. Within the next two months difficulties arose and the appellant's employment was terminated. The appellee filed a complaint against the appellant which was later amended. The amended complaint alleged that the appellant sent letters to the appellee's customers that contained "false and libelous" material, and it sought to enjoin the appellant from contacting the appellee's customers and discussing the appellee's business, and communicating in any way with the appellee's customers. After a hearing, the trial court issued its order on October 10, 1985, enjoining the appellant "from communicating false and misleading information concerning [the appellee], to business customers or potential business customers of either [the appellee] or [the appellant] or mentioning [the appellee] in any way in such communication except to state his period of employment with [the appellee], his position and duties with [the appellee] while in its employ."

The appellant enumerates four errors on appeal. We reverse.

"It must be confessed at the beginning that there is a great deal of the law of defamation which makes no sense. It contains anomalies and absurdities for which no legal writer ever has had a kind word, and it is a curious compound of strict liability imposed upon innocent

defendants, as rigid and extreme as anything found in the law, with a blind and almost perverse refusal to compensate the plaintiff for real and very serious harm." W. L. Prosser and W. P. Keeton, Prosser and Keeton on Torts, pp. 771-772 (5th ed. 1984).

The history of defamation law began in England where the local seigniorial courts decided all the controversies involving defamation at a time when the common law courts did not claim jurisdiction. As the ecclesiastical courts grew in power they took jurisdiction and treated defamation as a sin punishable by doing penance. In the sixteenth century, tort actions for slander appeared in the common law courts. A conflict between the common law courts and the ecclesiastical courts was resolved by a holding that absent temporal damage, defamation was purely a spiritual matter for the churches to handle. The proverbial floodgates were opened and the common law courts were inundated with claims. As a result, rigid restrictions were created. By the seventeenth century the infamous Star Chamber gained strength and used the crime of political libel to suppress what those in power considered seditious publications. What originated strictly as a crime was extended to non-political libels. Later, apparently to provide redress after dueling was made illegal, tort damages were awarded to the person defamed. With the horrors of the Star Chamber fresh in the minds of the public and the advent of free speech and press, defamation actions became unpopular and thus the general rule was created that defamation would not be enjoined. Id. at 772.

History has taught us to carefully guard our hard earned right to free speech. Our constitution provides, "Every person may speak, write, and publish sentiments on all subjects but shall be responsible for the abuse of that liberty." Art. I, Sec. I, Par. V. Thus we follow the general rule that "equity will not enjoin libel and slander." *Pittman v. Cohn Communities, Inc.*, 240 Ga. 106, 108 (239 SE2d 526) (1977). But, see *Retail Credit Co. v. Russell*, 234 Ga. 765, 778 (218 SE2d 54) (1975).

*Judgment reversed. All the Justices concur, except Hunt, J., not participating.*

DECIDED APRIL 23, 1986.

*Harman, Owen, Saunders & Sweeney, C. Dale Harman, Timothy J. Sweeney, Perry A. Phillips,* for appellant.

*Northcutt, Edwards, Germano & Kimmey, J. Lansing Kimmey,* for appellees.