## A00A1607. BRYAN v. MBC PARTNERS, L.P.
(541 SE2d 124)

MILLER, Judge.

Plaintiff MBC Partners, L.P. petitioned the superior court to enjoin Skyler D. Bryan from maintaining on his residential property a sign alleged to violate the terms of restrictive covenants contained in a recorded Declaration of Covenants, Conditions and Restrictions, until such time as Bryan obtained the written permission of the Architectural Control Committee (ACC) of the homeowners' association. A temporary restraining order (TRO) entered with notice immediately enjoined Bryan from placing any signs on his property and further ordered the removal of any existing signs.

Bryan admitted that the Declaration of Covenants dated December 5, 1995, was recorded, but denied that his property was subject to them or that he had violated them by failing to get prior written permission, contending there "was no Architectural Control Committee until after the filing of this lawsuit."

The Declaration provided: "No Structure shall be commenced, erected, placed, moved onto or permitted to remain on any Lot . . ." unless its plans and specifications were first submitted to and

approved by the ACC. The definition of "Structure" includes a "sign." More specifically:

> No signs whatsoever (including but not limited to commercial and similar signs) shall, without the ACC's prior written approval of plans and specifications therefor, be installed . . . or maintained on any Lot, or on any portion of a Structure visible from the exterior,

except for directional signs, "For Sale" signs, and other marketing activities deemed desirable by MBC. The Declaration's enforcement rights expressly include the right of abatement.

Dissatisfied with the failure of his builder to complete certain repairs, Bryan hung a sign from the front of his house facing the subdivision sales office. The sign was approximately seven feet by three feet and stated in white handwritten letters on a black background: "Before You Buy A Home In Here PLEASE See US." Bryan conceded he had not requested or received any permission from the ACC to put up any such sign. The sign stayed up for a week, before Bryan removed it in compliance with the TRO. During that week, Bryan noticed "seven or eight signs on houses and lots that said 'under contract.'" The first objection to Bryan's sign was a letter he received from the ACC hand-delivered on the day this action was commenced, after the hearing on the TRO. Bryan himself has never complained to the ACC or anyone from the homeowners' association about the commercial signs he noticed in the neighborhood.

After the evidentiary hearing, the superior court granted an interlocutory injunction, concluding that the sign violated the covenants applicable to Bryan's property and that Bryan did not seek approval of the extant ACC's representative, Martin. The superior court further noted "ample evidence of [the ACC's] failure to enforce the covenants as to numerous other signs of various categories," but concluded that seasonal decorations and inherently temporary signs (yard sale or lost dog) do not fall within the proscription against signs and that while service provider signs and other matters of a clearly commercial nature violated the applicable restriction, nevertheless the ACC's failure to enforce the restriction against these signs did not waive its right to enforce the restriction against Bryan's sign. The superior court further ruled that enforcement of the sign restriction is "not a violation of free speech rights."

Bryan's direct appeal to the Supreme Court of Georgia was transferred to the Court of Appeals. In three related enumerations of error, Bryan contends the trial court abused its discretion in enforcing the restrictive covenant against signs (1) because MBC waived the right to enforcement; (2) because MBC failed to show irreparable

harm; and (3) because the contractual provision violates the public policy of Georgia regarding freedom of speech. We affirm.

1. In our view, the failure of the ACC to object to certain commercial signs erected by other residents, builders, or tradesmen, which signs are arguably in violation of the same restrictive covenant invoked against Bryan, does not demand a finding of waiver or estoppel. There is evidence the ACC objected to Bryan's sign and asked him in writing to remove it. Conversely, there is no evidence that any lot owner objected to the commercial signs Bryan points to as establishing a waiver or estoppel. Since there was no prior written approval and the sign was disapproved by the ACC within a week of its erection, the superior court did not abuse its discretion in rejecting Bryan's claim of waiver or estoppel.[1]

2. Injunctive relief is authorized to prohibit threatened violations of restrictive covenants.[2]

> A trial court may issue an interlocutory injunction to maintain the status quo until the final hearing if, by balancing the relative equities of the parties, it would appear that the equities favor the party seeking the injunction. Thus, a demonstration of irreparable injury is not an absolute prerequisite to interlocutory injunctive relief.[3]

Bryan is bound by the Declaration in which he promised to abide by its aesthetic restrictions. Since the Declaration expressly provided for the remedy of abatement to enforce the covenants, there was no need to demonstrate irreparable harm, after balancing the equities of the parties.

3. The third enumeration contends that judicial enforcement of this restrictive covenant violates the public policy of Georgia with respect to restraints on free speech. We disagree.

It is well settled that the grantor of real property may restrict the use of it by restrictive covenants contained in or incorporated into the deed.[4] By accepting a deed, the grantee is bound by the covenants contained therein.[5] The limitation on the validity of restrictive covenants is that they must be clearly established and they cannot be

---

[1] *Turner Advertising Co. v. Garcia*, 251 Ga. 46, 48-49 (2) (302 SE2d 547) (1983) (waiver). Accord *Antill v. Sigman*, 240 Ga. 511, 512-513 (3) (241 SE2d 254) (1978) (estoppel).

[2] See, e.g., *Golston v. Garigan*, 245 Ga. 450, 451-452 (3) (265 SE2d 590) (1980).

[3] (Citations and punctuation omitted.) *Parker v. Clary Lakes Recreation Assn.*, 272 Ga. 44, 45 (526 SE2d 838) (2000).

[4] *Smith v. Pindar Real Estate Co.*, 187 Ga. 229, 234 (1) (200 SE 131) (1938). See generally OCGA § 44-5-60.

[5] OCGA § 44-5-39.

contrary to public policy.[6]

For purposes of this appeal, we assume that Bryan's act of hanging a sign from his residence indicating he was an owner dissatisfied with his builder and inviting prospective owners to engage in discussions was a form of communication entitled to constitutional protection under the First Amendment of the U. S. Constitution and Art. I, Sec. I, Par. V of the 1983 Georgia Constitution.[7] And generally an injunction will not be granted to restrain the torts of slander or libel, however illegal and outrageous the communications.[8] Nevertheless, a person may waive or renounce what the law has established in his favor when he does not thereby injure others or affect the public interest.[9] This ancient rule applies to all the private relations in which persons may place themselves toward each other[10] and includes the waiver of constitutional rights.[11]

Thus, it is the paramount public policy of this State that courts will not lightly interfere with the freedom of parties to contract on any subject matter, on any terms, unless prohibited by statute or public policy, and injury to the public interest clearly appears.[12] In our view, Bryan validly contracted to abide by the restrictive covenants mutually applicable to all lot owners, including a valid proscription on all signs whatsoever except as approved by the ACC. Bryan "was at liberty to waive a constitutional as well as a legal right in a matter of this sort."[13] The superior court did not abuse its discretion in entering the interlocutory injunction to restrain Bryan's continuing violation of the restrictive covenants by hanging this unapproved[14] noncommercial sign from his residence.

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 25, 2000 — 

---

[6] *Winslette v. Keeler*, 220 Ga. 100, 101 (1) (137 SE2d 288) (1964). See also OCGA § 44-5-60 (d) (3).

[7] *Pittman v. Cohn Communities*, 240 Ga. 106, 108-109 (239 SE2d 526) (1977).

[8] *Singer Mfg. Co. v. Domestic Sewing Machine Co.*, 49 Ga. 70, 73-74 (1873). Accord *Pittman v. Cohn Communities*, supra, 240 Ga. at 109.

[9] OCGA § 1-3-7.

[10] *McCoy v. H. N. R. Investment Group*, 210 Ga. App. 645, 646 (2) (437 SE2d 355) (1993).

[11] *Senters v. Wright & Lopez, Inc.*, 220 Ga. 611, 614 (140 SE2d 904) (1965).

[12] *Kurc v. Herren*, 196 Ga. App. 331, 332 (1) (396 SE2d 62) (1990). We decline Bryan's invitation to hold that judicial enforcement of this race-neutral covenant is "State" action or deprivation invoking the Equal Protection Clause of the Fourteenth Amendment. Compare *Shelley v. Kraemer*, 334 U. S. 1 (68 SC 836, 92 LE 1161) (1948).

[13] *Humphries v. McWhorter & Brightwell*, 25 Ga. 37, 39 (1858).

[14] We express no opinion whether the ACC's refusal to permit a sign containing truthful information after a proper application would be unreasonable, arbitrary, and capricious under *Winslette v. Keeler*, supra, 220 Ga. at 103 (2).

*Thompson & Wick, Robert T. Thompson, Jr., Melinda A. Garling-ton, Gordon J. Rose, Stephen G. Weizenecker*, for appellant.
*Bray & Johnson, H. Michael Bray*, for appellee.