**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 4, 2022**

# In the Court of Appeals of Georgia

A21A0558. WOOD et al. v. WADE et al.

PHIPPS, Senior Appellate Judge.

This appeal arises from a breach of contract and fraud action brought by Nicole Wade, Jonathan Grunberg, Taylor Wilson, and Wade, Grunberg & Wilson, LLC ("Appellees") against L. Lin Wood and L. Lin Wood P.C. ("Appellants"). The trial court granted the Appellees' request for an interlocutory injunction to enjoin the Appellants from violating a non-disparagement clause in a settlement agreement between the parties. On appeal, the Appellants contend that the trial court erred by entering the interlocutory injunction, which they argue amounts to an impermissible prior restraint against their constitutional right of free speech. The Appellants also contend that the trial court erred by basing the interlocutory injunction on a

misinterpretation of the plain language of the non-disparagement clause. For the following reasons, we affirm.

The parties are lawyers, who formerly worked together, and their firms. In the context of ending their professional relationship, the parties entered into a settlement agreement which contains the following non-disparagement clause:

> 3. *Non-Disparagement*. LLW PC and L. Lin Wood, individually, agree not to disparage WGW.[1] This agreement is not to be construed to imply or suggest that LLW PC and/or L. Lin Wood has disparaged WGW or its members prior to the date of this Agreement. Nothing in this provision prevents the Parties from providing truthful information about each other and its members in response to a court order or subpoena, or during any federal, state, or local governmental body investigation or proceeding. LLW PC and L. Lin Wood, individually, do not seek in this Agreement any legal protection regarding any future disparagement of LLW PC and L. Lin Wood, individually, but shall address any future false and defamatory statements by WGW and its members about LLW PC and L. Lin Wood, individually, on a case-by-case basis as provided by law.

The Appellees filed this lawsuit seeking to enforce the payment of certain fees under the terms of the settlement agreement. Prior to filing their complaint, the

---

[1] The settlement agreement defines LLW PC to mean L. Lin Wood, P.C. and defines WGW to mean, as relevant here, the Appellees.

Appellees provided a copy of the draft complaint to the Appellants. According to Wilson, clients and co-counsel of the Appellees told him that Wood had called them and referred to the Appellees as "extortionists" in at least one phone call. Wood also e-mailed what he contends is a shared client and stated, "Nicole Wade and her law partners are preparing to sue me tomorrow for fraud in a frivolous lawsuit intended to extort money . . . that they did not earn," "are putting their greed and personal interests ahead of the interests of their clients," are "crooks," and are guilty of other "wrongdoing." (Punctuation omitted.) After the lawsuit was filed, Wood issued a statement that he submitted to the press and posted on social media. In the statement, Wood accused the Appellees of, among other things, engaging "in a disgraceful and unprofessional effort to publicly attack [him]," of participating in a "shakedown effort" "with an intent to damage [his] professional reputation under the guise of the litigation privilege" and "to extort money from [him]."

The Appellees filed a motion seeking a preliminary injunction to enjoin the Appellants from violating the non-disparagement clause. At the hearing on the motion, Wood indicated (through counsel) to the trial court that he wanted to be able to continue to make communications and comments about the Appellees in social media while this litigation is pending. The trial court granted the Appellees' motion,

3

finding that the Appellants' statements that the Appellees had filed a frivolous lawsuit for the purpose of extorting the Appellants, were seeking to be paid money that they did not earn, and were participating in a shakedown effort were disparaging on their face. In the order at issue here, the trial court preliminarily enjoined the Appellants from "[i]ssuing, publishing or making disparaging statements or disparaging comments about [the Appellees] whether orally, in writing, digitally or through social media." The order stated:

> Nothing in this order shall prevent [the Appellants] from providing truthful information about [the Appellees] during this lawsuit, which shall include hearings, pleadings, trials, depositions, or discovery proceedings. Similarly, this [o]rder shall not prevent [the Appellants] from providing truthful information about [the Appellees] in response to a court order or subpoena, or during any federal, state, or local government body investigation or proceeding.

The Appellants appeal from the order granting the interlocutory injunction.

Whether to grant a request for interlocutory injunctive relief is within the trial court's discretion, and we will not reverse its decision "unless the trial court made an error of law that contributed to the decision, there was no evidence on an element essential to relief, or the court manifestly abused its discretion." *SRB Investment Svcs., LLLP v. Branch Banking & Trust Co.*, 289 Ga. 1, 5 (3) (709 SE2d 267) (2011)

4

(citation and punctuation omitted). See OCGA § 9-5-8 ("The granting and continuing of injunctions shall always rest in the sound discretion of the judge, according to the circumstances of each case.") "The purpose for granting interlocutory injunctions is to preserve the status quo, as well as balance the conveniences of the parties, pending a final adjudication of the case." *Kinard v. Ryman Farm Homeowners' Assn.*, 278 Ga. 149, 149 (598 SE2d 479) (2004) (citation and punctuation omitted).

When deciding whether to issue an interlocutory injunction, a trial court should consider whether:

> (1) there is a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted; (2) the threatened injury to the moving party outweighs the threatened harm that the injunction may do to the party being enjoined; (3) there is a substantial likelihood that the moving party will prevail on the merits of [its] claims at trial; and (4) granting the interlocutory injunction will not disserve the public interest. The first factor — substantial threat of irreparable injury if an interlocutory injunction is not entered — is the most important one, given that the main purpose of an interlocutory injunction is to preserve the status quo temporarily to allow the parties and the court time to try the case in an orderly manner.

*City of Waycross v. Pierce County Bd. of Commrs.*, 300 Ga. 109, 111 (1) (793 SE2d 389) (2016) (citation and punctuation omitted). "Because the test for the issuance of

5

an interlocutory injunction is a balancing test, it [is] not incumbent upon the [movant] to prove all four factors to obtain the interlocutory injunction." Id.

1. The Appellants' primary argument for reversal is that the trial court erred as a matter of law by entering an injunction that amounts to an impermissible prior restraint against their constitutional right of free speech. We disagree.

"[T]he term 'prior restraint' is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur[.]" *WXIA-TV v. State of Ga.*, 303 Ga. 428, 434 (3), n. 7 (811 SE2d 378) (2018) (citation and punctuation omitted). It is well-established that "prior restraints on speech and publication are the most serious and the least tolerable infringement[s] on First Amendment[2] rights." Id. at 434 (3) (citation and punctuation omitted). As our Supreme Court has recognized, the gravamen of an unlawful prior restraint is that the parties are prohibited, on pain of contempt, "from making statements that they would otherwise be free to make[.]" Id. at 434 (3), n. 7 (citation and punctuation omitted).

---

[2] The First Amendment of the U. S. Constitution provides, in relevant part: "Congress shall make no law . . . abridging the freedom of speech[.]"

In the order granting the interlocutory injunction, the trial court addressed the Appellants' argument that injunctive relief would constitute an unlawful prior restraint on free speech in this case. The trial court acknowledged that "the Georgia Supreme Court has consistently exhibited its firm policy to protect the right of free speech," see, e.g., *High Country Fashions v. Marlenna Fashions*, 257 Ga. 267, 268 (357 SE2d 576) (1987), but noted that "[t]he line of Georgia cases rejecting injunctive relief did not . . . arise in the context of a breach of contract claim." As the trial court explained, "[t]he issue presented here is whether [the Appellants], having entered into a binding settlement agreement, are free to make the statements [the Appellees] seek to enjoin." The trial court considered some of the "limited number of cases nationally which address the interplay between contract rights and the First Amendment." For example, in *Cohen v. Cowles Media Co.*, 501 U. S. 663, 665, 672 (111 SCt 2513, 115 LE2d 586) (1991), the United States Supreme Court considered "whether the First Amendment prohibits a plaintiff from recovering damages, under state promissory estoppel law, for a newspaper's breach of a promise of confidentiality given to the plaintiff in exchange for information" and concluded that "the First Amendment does not confer on the press a constitutional right to disregard promises that would otherwise be enforced under state law[.]" Similarly, citing the analysis in *Cohen*, the

7

Colorado Supreme Court later concluded that a breach of contract action for a violation of a non-disparagement clause was not barred by the First Amendment. *Pierce v. St. Vrain Valley School Dist. RE-1J*, 981 P2d 600, 602 (II) (A), 604 (II) (B) (Colo. 1999). Further, in *Aultcare Corp. v. Roach*, No. 2007CA0009, 2007 WL 3088036, *2-3 (II, III) (Ohio Ct. App. 5th Dist. Oct. 22, 2007), an Ohio appellate court rejected the argument that a preliminary injunction enforcing a non-disparagement provision in a settlement agreement constituted an undue restraint on free speech. Similarly, the Connecticut Supreme Court has held that a judicial restraining order enforcing a confidentiality agreement did not constitute a violation of the First Amendment's prohibition on prior restraints on speech. *Perricone v. Perricone*, 292 Conn. 187, 190, 205 (II) (A) (972 A2d 666) (2009). And the Vermont Supreme Court likewise has reversed a trial court order vacating an injunction agreed to by the parties, holding that "private parties may enter agreements that waive their respective free speech rights, and courts may enforce those agreements, without running afoul of the First Amendment." *Kneebinding, Inc. v. Howell*, 208 Vt. 578, 605 (I) (B) (3) (201 A3d 326) (2018). The trial court here concluded that these cases establish that "[p]rivate parties are free to enter into contracts waiving rights which

8

the government would otherwise be bound to honor" and that enforcement of such agreements does not constitute an impermissible prior restraint.

Neither party has cited, and we are unaware of, any controlling Georgia authority as to whether an interlocutory injunction enforcing a non-disparagement clause constitutes an impermissible prior restraint on free speech. However, in *Bryan v. MBC Partners, L.P.*, 246 Ga. App. 549, 549, 551-552 (3) (541 SE2d 124) (2000), we considered a similar issue — whether an interlocutory injunction enforcing a restrictive covenant barring the erection of signs without the permission of a homeowner's association committee violates the public policy of Georgia with respect to restraints on free speech. In *Bryan*, a homeowner hung a sign from the front of his house stating: "Before You Buy A Home In Here PLEASE See US." Id. at 550 (punctuation omitted). The plaintiff, contending the sign violated the terms of applicable restrictive covenants, petitioned the superior court to enjoin the homeowner from maintaining the sign on his property until he obtained the required written permission. Id. at 549. The superior court granted an interlocutory injunction, concluding that the sign violated the restrictive covenants because the homeowner had not sought the required approval. Id. at 550. For purposes of the ensuing appeal, this Court assumed that the homeowner's act of hanging the sign "was a form of

9

communication entitled to constitutional protection under the First Amendment of the U. S. Constitution and Art. I, Sec. I, Par. V of the 1983 Georgia Constitution."[3] Id. at 552 (3). We noted that, while an injunction generally "will not be granted to restrain the torts of slander or libel, however illegal and outrageous the communications," a person nevertheless "may waive or renounce what the law has established in his favor when he does not thereby injure others or affect the public interest." Id. Of particular importance to the instant case, we then stated: "This ancient rule applies to all the private relations in which persons may place themselves toward each other and includes the waiver of constitutional rights." Id. (citation omitted). Moreover, we highlighted, "it is the paramount public policy of this State that courts will not lightly interfere with the freedom of parties to contract on any subject matter, on any terms, unless prohibited by statute or public policy, and injury to the public interest clearly appears." Id. Consequently, we found that the homeowner "was at liberty to waive a constitutional as well as a legal right in a matter of this sort." Id. (citation and punctuation omitted). We concluded that enforcement of the restrictive covenants

---

[3] Art. I, Sec. I, Par. V of the 1983 Georgia Constitution provides: "No law shall be passed to curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish sentiments on all subjects but shall be responsible for abuse of that liberty."

10

therefore did not violate public policy regarding restraints on free speech and that the superior court did not abuse its discretion in entering the interlocutory injunction to restrain the homeowner's continuing violation of the restrictive covenants. Id.

The same reasoning applies here. Although the interlocutory injunction in *Bryan* was based on a restrictive covenant, not a non-disparagement clause, both the homeowner in *Bryan* and the Appellants in the instant case contracted to abide by a waiver of constitutional rights. See *Bryan*, 246 Ga. App. at 552 (3). In *Bryan*, the homeowner agreed to a proscription of all signs except as approved by an HOA committee. Id. In the instant case, the Appellants agreed not to disparage the Appellees. Both the homeowner in *Bryan* and the Appellants here were at liberty to waive their constitutional right to free speech.

The cases from other jurisdictions considered by the trial court are consistent with our analysis in *Bryan* and support our conclusion that the trial court's preliminary injunction enforcing the non-disparagement clause agreed to by the parties does not constitute an impermissible prior restraint. See *Cohen*, 501 U. S. at 672; *Pierce*, 981 P2d at 604 (II) (B); *Aultcare Corp.*, 2007 WL 3088036 at *2-3 (II, III); *Perricone*, 292 Conn. at 205 (II) (A); *Kneebinding, Inc.*, 208 Vt. at 605 (I) (B) (3).

The Appellants argue that *Bryan* is distinguishable because the homeowner in that case had agreed to a restriction on the time, place, and manner of his speech, not the content of his speech. Relying on *Reed v. Town of Gilbert*, 576 U. S. 155, 163 (II) (A) (135 SCt 2218, 192 LE2d 236) (2015), *McKenzie v. State*, 279 Ga. 265, 267 (626 SE2d 77) (2005), and *Coffey v. Fayette County*, 279 Ga. 111 (610 SE2d 41) (2005), the Appellants contend that content-based restrictions are presumptively unconstitutional and the interlocutory injunction at issue in this case is an unconstitutional restraint on the content of the Appellants' speech. However, *Reed*, *McKenzie*, and *Coffey* did not involve a contractually agreed-upon content-based restriction on free speech. The Appellants also cite a number of cases reversing trial court orders enjoining speech on an interlocutory basis, but, once again, none of the cases involve a voluntary agreement between private parties to restrict speech. See *Cohen v. Advanced Med. Group of Ga.*, 269 Ga. 184, 185 (496 SE2d 710) (1998); *Fernandez v. North Ga. Regional Med. Center*, 260 Ga. 765, 766 (1) (400 SE2d 6) (1991); *High Country Fashions*, 257 Ga. at 268; *Brannon v. American Micro Distributors*, 255 Ga. 691, 692 (342 SE2d 301) (1986); *Pittman v. Cohn Communities, Inc.*, 240 Ga. 106, 110 (239 SE2d 526) (1977); *Hartman v. The PIP-Group, LLC*, 349 Ga. App. 233, 238 (5) (825 SE2d 601) (2019). In fact, the

12

Appellants have not cited any case addressing the question of whether an interlocutory injunction to enforce a contractually agreed-upon content-based restriction on free speech is an impermissible prior restraint.

Finally, the Appellants contend that the Georgia Constitution is more protective of freedom of speech than the First Amendment with regard to the issuance of injunctions. Specifically, the Appellants argue that the language in the Georgia Constitution providing that people may speak on any subject but are responsible for abuse of that liberty "explicitly enshrines the prohibition against a prior restraint." However, we held in *Bryan* that a party can waive the free speech protections provided by the Georgia Constitution. See *Bryan*, 246 Ga. App. at 552 (3). Because the Appellants entered into a contract agreeing not to disparage the Appellees, they waived any constitutional rights to free speech insofar as that speech disparages the Appellees. Consequently, the interlocutory injunction enforcing the non-disparagement clause in this case is not an impermissible prior restraint on free speech. See id.

2. The Appellants contend that even if the injunction is not an impermissible prior restraint on free speech, the trial court erred in finding that the Appellees met the requirements for obtaining an interlocutory injunction. We disagree.

After balancing the interests of the parties, the trial court determined that an interlocutory injunction should be issued to preserve the status quo in this case. The court found that there was a substantial threat that the Appellees would "suffer irreparable injury if injunctive relief is not granted," the threatened injury to the Appellees outweighed the potential injury to the Appellants, the Appellees are likely to succeed on the merits of their non-disparagement breach of contract claim, and an injunction will not disserve the public interest.

(a) The Appellants argue that the trial court's finding that the Appellees are likely to succeed on the merits of their claim for breach of the non-disparagement clause was premised on an erroneous interpretation of the plain language of the clause. The trial court found that "the parties' agreement sets out a general non-disparagement obligation with the limited exception that any party may provide truthful information in response to a court order or subpoena and may provide truthful information within the confines of a pending government investigation or proceeding." The Appellants argue that the language of the non-disparagement clause "carved out and preserved their ability to make statements about [the] Appellees, including disparaging statements, during the pendency of a lawsuit like this one."

A settlement agreement is a contract subject to the usual rules of contract construction. *City of Demorest v. Roberts & Dunahoo Properties, LLC*, 288 Ga. App. 708, 711-712 (1) (655 SE2d 617) (2007).

> Construing the language of a contract presents a question of law for the court, unless the language presents an ambiguity that cannot be resolved by the rules of construction. The cardinal rule of construction is to ascertain the contracting parties' intent, and where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. To determine the intent of the parties, all the contract terms must be considered together in arriving at the construction of any part, and a construction upholding the contract in whole and every part is preferred.

*Brazeal v. NewPoint Media Group, LLC*, 331 Ga. App. 49, 53 (769 SE2d 763) (2015) (citations and punctuation omitted). "Where the language of the contract is plain, clear, and undisputed but the meaning of the language is in dispute, construction of such term is for the trial court to determine the meaning[.]" *Bowman v. Walnut Mountain Property Owners Assn.*, 251 Ga. App. 91, 94 (1) (b) (553 SE2d 389) (2001) (physical precedent only).

Here, the first sentence of the non-disparagement clause prohibits the Appellants from disparaging the Appellees. The third sentence provides: "Nothing

15

in this provision prevents the Parties from providing truthful information about each other and its members in response to a court order or subpoena, or during any federal, state, or local governmental body investigation or proceeding." The trial court considered the Appellants' argument that "because the present litigation is pending, [they] may comment publicly and negatively about the [Appellees] in any forum, including social media, in statements to the press, and in private communications to clients and third parties," and determined that "[t]o conclude that by filing suit [the Appellees] authorized [the Appellants] to make any statements they might choose, to anyone, in any forum would necessarily render the contracted for Non-Disparagement Clause meaningless." Accordingly, the trial court concluded that the Appellants "may not 'defend themselves in the court of public opinion' by disparaging the [Appellees]."

We agree with the trial court's construction of the non-disparagement clause. The key preposition in the third sentence, "during," is commonly defined as "throughout the duration of" or "at a point in the course of."[4] Merriam-Webster's

_____

[4] The trial court used a similar definition: "Throughout the course or duration of; within the time of."

16

Online Dictionary, http://www.merriam-webster.com/dictionary/during; see also OCGA § 13-2-2 (2); *Capital Color Printing v. Ahern*, 291 Ga. App. 101, 107 (1) (661 SE2d 578) (2008) ("This Court has long recognized that dictionaries may supply the plain and ordinary meaning of a word.") (citation and punctuation omitted). The Oxford English Dictionary defines the phrase "in the course of" as "in the process of, during the progress of." The Oxford English Dictionary (3d ed.), https://www.oed.com/view/Entry/43183?redirectedFrom=in+the+course+of#eid81 26815 (October 2021 update).

The Appellants argue that "[t]he plain meaning of the word 'during' is temporal — i.e., while something is going on." However, this argument focuses solely on the "duration" aspect of the definition and ignores the "in the course of" aspect. The Appellants' interpretation of the third sentence would vitiate the Appellants' agreement not to disparage the Appellees. Considering all of the contract terms together, as we must do, see *Brazeal*, 331 Ga. App. at 53, the only reasonable interpretation of the third sentence is that a party may provide truthful information (a) in response to a court order or subpoena or (b) in the course of any federal, state, or local governmental body investigation or proceeding, or, as the trial court put it, "within the confines of a pending government investigation or proceeding."

17

(b) The Appellants also argue that the trial court erred in finding that the Appellees were likely to succeed on the merits because the settlement agreement does not provide that a breach of the non-disparagement clause may be remedied by injunctive relief. The Appellants' argument is based on Section 4 of the settlement agreement. Sections 4A and 4B of the agreement set out the mutual general releases agreed to by the parties. Section 4C provides that the parties will not sue each other on the basis of the claims released in Sections 4A and 4B. Section 4D provides that the releases in Sections 4A and 4B "may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such releases."

The Appellants argue that because the settlement agreement explicitly identified injunctive relief as a remedy for a breach of the general releases in Section 4 but not for a breach of the non-disparagement clause, the trial court committed plain legal error in finding that injunctive relief was a remedy for a breach of the non-disparagement clause. This argument, however, ignores Section 4F of the settlement agreement, which provides, in pertinent part: "Notwithstanding anything to the contrary in this Section 4 and in this Agreement, the Parties acknowledge and agree that any actions necessary to enforce the terms of this Agreement are not released or

18

barred." Thus, contrary to the Appellants' argument, it is clear that the parties intended, as reflected by Section 4F, to ensure that remedies available to enforce the settlement agreement would not be limited by Section 4. See *Imaging Systems Intl. v. Magnetic Resonance Plus*, 227 Ga. App. 641, 644-645 (1) (490 SE2d 124) (1997) (contract provisions severely restricting remedies must be explicit, prominent, clear, and unambiguous).

(c) The Appellants next contend that the trial court erred in granting injunctive relief because the Appellees have not shown a substantial threat of irreparable harm.[5] "Equity intervenes by grant of an interlocutory injunction to prevent irreparable

[5] The Appellees contend that this Court should not consider this argument or the arguments addressed in Divisions 2 (d) and (e) because they are not within the scope of the Appellants' second enumeration of error, which reads as follows: "The trial court erred as a matter of law by basing its interlocutory injunction on a misinterpretation and misapplication of the plain language of a contractual non-disparagement clause." Although this enumeration of error specifies only one of the Appellants' arguments, in their first enumeration of error the Appellants sufficiently identified the ruling of the trial court that they contend was erroneous — entering the interlocutory injunction. See *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999) ("An error of law has as its basis a specific ruling made by the trial court."). We will therefore consider all of the Appellants' arguments supporting their position that the trial court erred by entering the interlocutory injunction. See id. at 539-540 ("Because the arguments supporting a position concerning a legal ruling are not themselves legal rulings, they do not have to be enunciated in the enumeration of errors in order to merit appellate consideration.").

damage to one of the parties and to maintain the status quo until a final determination is made." *Treadwell v. Investment Franchises*, 273 Ga. 517, 519 (543 SE2d 729) (2001) (citation and punctuation omitted). The substantial threat of irreparable injury if an interlocutory injunction is not entered is the most important factor a court considers when deciding whether to grant a request for injunctive relief, "given that the main purpose of an interlocutory injunction is to preserve the status quo temporarily to allow the parties and the court time to try the case in an orderly manner." *Bishop v. Patton*, 288 Ga. 600, 604-605 (3) (a) (706 SE2d 634) (2011), disapproved of on other grounds by *SRB Investment Svcs., LLLP*, 289 Ga. at 5 (3), n. 7.

Here, the trial court found that the Appellants accused the Appellees of "criminal acts, attacked [the Appellees'] characters, ethics, integrity and professionalism to clients and to the general public in multiple forums," and "expressed their intention to continue to do so." These findings are supported by the record. The trial court also found that there was a substantial threat that the Appellees would suffer irreparable harm if the court did not grant injunctive relief because "having clients, other members of the profession and hundreds of thousands of members of the general public being told by a trusted source that the [Appellees] are

engaged in criminal behavior and cannot be trusted [would] negatively impact [the Appellees'] ability to engage in their chosen profession[,]" and "for members of a profession in which one acts as a fiduciary and must adhere to the highest ethical standards, reputational injury is substantially likely to cause irreparable injury." The record shows that Wood has over 181,000 followers on Twitter. Given that some evidence supports the trial court's findings, the trial court did not manifestly abuse its discretion in ruling that the Appellees would suffer irreparable harm if the court did not grant injunctive relief. See *Aliera Healthcare v. Anabaptist Healthshare*, 355 Ga. App. 381, 388 (3) (a) (844 SE2d 268) (2020) (because some evidence supported the trial court's findings, there was no manifest abuse of discretion in the trial court's ruling that a substantial threat of irreparable injury existed if the injunction were not granted).

(d) The Appellants also contend that the trial court erred in granting injunctive relief because the Appellees have an adequate remedy at law — an action for money damages — for any alleged breach of the non-disparagement clause. "[I]t is error to grant an injunction when the party seeking it has an adequate remedy at law." *Allen v. Hub Cap Heaven*, 225 Ga. App. 533, 540 (8) (484 SE2d 259) (1997). "But it is important to note it is not enough that there is a remedy at law. It must be plain and

adequate, or, in other words, as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity." *Aliera Healthcare*, 355 Ga. App. at 389 (3) (a) (citation and punctuation omitted). "Injunction is an appropriate remedy in a proper case to prevent acts in violation of contract, producing irreparable injury to the plaintiff[.]" *English v. Little*, 164 Ga. 805, 806 (139 SE 678) (1927).

As discussed in Division 2 (c), the trial court found that having clients, other lawyers, and the general public being told by the Appellants that the Appellees are engaged in criminal behavior and cannot be trusted would negatively impact the Appellees' ability to practice law and that the resulting "reputational injury is substantially likely to cause irreparable injury." The trial court found that the threatened injury to the Appellees, "is, at a minimum, undermining of their ability to engage in their profession because of ongoing reputational damage should [the Appellants] be permitted to continue violating [the non-disparagement clause]. By finding that there was a substantial threat that the Appellees would suffer irreparable harm if injunctive relief were not granted, the trial court implictly concluded that money damages would not constitute an adequate remedy for damage to the Appellees' reputation. See *BellSouth Telecommunications, Inc. v. MCImetro Access Transmission Svcs., LLC*, 425 F3d 964, 970 (III) (A) (2) (11th Cir. 2005) ("Although

22

economic losses alone do not justify a preliminary injunction, the loss of customers and goodwill is an irreparable injury.") (citation and punctuation omitted); see also *Allstate Ins. Co. v. Shah*, No. 1:16-CV-997-SCJ, 2016 WL 10906482, at \*3 (III) (B) (N.D. Ga. 2016) (loss of business is "irreparable because it is difficult, if not impossible, to determine the monetary loss suffered") (citation and punctuation omitted); *Variable Annuity Life Ins. Co. v. Joiner*, 454 FSupp2d 1297, 1304 (I) (B) (S.D. Ga. 2006) (harm from "lost customer goodwill and business is irreparable because it is neither easily calculable, nor easily compensable and is, therefore, an appropriate basis for injunctive relief"). On the specific facts of this case, where the Appellees specifically bargained for protection against such potential damage, and given that some evidence supports the trial court's finding that there was a substantial threat that the Appellees would suffer irreparable harm if injunctive relief were not granted, the trial court did not abuse its broad discretion in granting injunctive relief. See *Aliera Healthcare*, 355 Ga. App. at 388 (3) (a).

(e) Finally, the Appellants contend that the trial court erred in granting injunctive relief because the injunction would disserve the public interest. The trial court found that parties in this State "may agree to waive valuable rights via contract," that any limitations on the Appellants' speech in the present case was a

23

result of an agreement to such limits, and that enforcing the non-disparagement clause "furthers public policy by encouraging the right and freedom to contract" and to "enter[] into binding settlements." The Appellants argue that the injunction will disserve the public interest because "it harms the public's right to hear what [the] Appellants have to say relating to the lawsuit and [the] Appellees." They also argue that the injunction "restricts Mr. Wood's ethical duty to provide full and complete information to his clients and prospective clients who inquire about the ongoing lawsuit that has received considerable media attention, which necessarily includes information about the parties and their claims."

The Appellants' implicit claim is that not being able to speak disparagingly about the Appellees in the context of this lawsuit somehow harms the public interest. However, the Appellants have not elaborated any arguments or cited any legal authority supporting their suggestions that (a) the public has an interest in the Appellants' ability to disparage the Appellees while speaking about this litigation or (b) any such interest is substantial enough to outweigh the Appellees' right to obtain what they bargained for in the settlement agreement. Absent any such authority, we discern no abuse of discretion in the trial court's balancing of these factors in favor of the Appellees' right to obtain what they bargained for, particularly in light of the

24

public policy favoring the enforcement of contracts. See *Bryan*, 246 Ga. App. at 552 (3). The injunction at issue does not prevent the Appellants from making non-disparaging statements to the media. Nor does it prevent the Appellants from making non-disparaging statements about the lawsuit and the Appellees to their clients and prospective clients. In fact, in the order granting the interlocutory injunction, the trial court explicitly stated that the Appellants may "comment on the litigation, so long as they do not disparage" the Appellees. Consequently, the Appellants have not shown that granting interlocutory injunctive relief would disserve the public interest.

For all of the reasons discussed above, we conclude that the trial court did not abuse its "considerable discretion" in granting the motion for an interlocutory injunction. *Aliera Healthcare*, 355 Ga. App. at 392 (3) (d).

3. The Appellants have filed a motion for stay of the injunction pending appeal; a motion for expedited consideration of the motion for stay of the injunction pending appeal; and a motion for stay of the injunction pending appeal and request for expedited consideration. This Court hereby DENIES all of the Appellants' outstanding motions as moot.

*Judgment affirmed. Rickman, C. J., and McFadden, P. J., concur.*